# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SEDRICK FRANKLIN,                          Civil Action No. 1:04-cv-089
        Petitioner,

                                                Spiegel, J.

        vs.                                      Black, M.J.

MARGARET BRADSHAW, WARDEN,         **REPORT AND**
        Respondent.                         **RECOMMENDATION**

Petitioner, a state prisoner, brings this case through counsel seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  The case is now before the Court upon the petition (Doc. 1), respondent's return of writ and exhibits thereto (Doc. 12), and petitioner's traverse (Doc. 15).

## I.  FACTS

This case involves the following facts, as summarized by the Twelfth District Ohio Court of Appeals:[1]

> {¶ 1} Defendant-appellant, Sedrick Franklin, appeals his conviction following a jury trial in the Butler County Court of Common Pleas for murder and felonious assault. We affirm the decision of the trial court.

> {¶ 2} On July 5, 2000, Darrell Wyatt approached Toni Bundy in order to purchase crack cocaine from her at her house in Hamilton, Ohio. Wyatt had purchased crack from Bundy previously in the day and was returning for more. As Wyatt approached Bundy's premises, Bundy came out of the house with appellant. Appellant said he would give Wyatt a better deal on crack than Bundy. Wyatt gave appellant $40 in exchange for the crack.

---

[1]      The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

{¶ 3} Wyatt returned to his vehicle and gave the crack to the passenger in his vehicle, Bruce Hennig. Hennig determined the substance was "fleece," or counterfeit crack. Wyatt went across the street to demand the return of his money from appellant. Appellant was standing next to a truck with passengers in it. When Wyatt approached appellant, Wyatt noticed appellant reach behind his back for something. Wyatt decided to "cut his losses," and ran to his vehicle. When Wyatt turned around, he saw appellant pointing a gun at him. Wyatt entered his vehicle and drove away. Wyatt heard three gunshots and the rear window of his vehicle was shattered. One of the bullets entered the headrest on the passenger side of Wyatt's vehicle. Another of the bullets struck Wyatt's passenger, Hennig, in the head, killing him. Wyatt drove to a nearby store where he called 911 to report the shooting.

{¶ 4} Police arrived at the scene to investigate and interviewed appellant. Appellant claimed that he had spent the day at his grandmother's house, that he shot a game of pool at Michael's in Fairfield, that he stopped at the Ramada, and then returned to his grandmother's house. Appellant denied that he was in the area of the shooting on the night in question.

{¶ 5} Detective Jim Calhoun then spoke to Bundy. She identified appellant from a photo lineup as the person who sold the "fleece" to Wyatt and fired gunshots at him. Bundy stated that after appellant sold Wyatt the "fake dope," she and appellant walked over to a pickup truck in which her friends, Lennie Riggins, Brandon Jarrett and Shonnie King, were seated. Bundy stated Wyatt approached appellant upset about the drug sale and requested the return of his money. Bundy stated Wyatt then walked back to his vehicle. Bundy then saw appellant pull out a gun, hold it sideways, and point it at Wyatt. Bundy testified at trial that she saw the muzzle flash from the gun fired at Wyatt's vehicle and that she heard three shots fired as Wyatt's vehicle drove away. Bundy told Det. Calhoun that appellant was the only person who had a gun that evening.

{¶ 6} Lennie Riggins also gave a statement to the police that night. Riggins stated he witnessed the drug transaction and saw Wyatt confront appellant beside the truck to demand his money back. Riggins stated he heard three booms and then a thump as appellant jumped into the bed of the pickup truck.

{¶ 7} Appellant was interviewed again after officers determined that his alibi was not true. Appellant maintained he did not have a gun. Appellant was tried before a jury and sentenced to 15 years to life in prison. . . .

(Doc. 12, Exh. 7 at 1-3).

## II. PROCEDURAL HISTORY

Petitioner was indicted by the Butler County Grand Jury in September 2000 on one count of murder in violation of Ohio Rev. Code § 2903.02(B), with a firearm specification, one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2), with a firearm specification, one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A), and one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A). (Doc. 12, Exh. 1).

Petitioner pleaded guilty to the charge of trafficking in cocaine, and the possession charge was merged into the trafficking count of the indictment.  (Doc. 12, Exh. 2).  Petitioner proceeded to a jury trial on the remaining two counts and was found guilty on each.  He was sentenced to 15 years to life imprisonment on the murder conviction, seven years on the felonious assault conviction to run concurrently with the previous count, and 17 months on the trafficking in cocaine conviction. (Doc. 12, Exh. 3).

Represented by trial counsel, petitioner filed a timely appeal of his conviction and sentence.  He filed his appellate brief through new counsel raising two assignments of error:

> 1.  THE DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF [TRIAL] COUNSEL.
>
> 2.  THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ADMITTED INTO EVIDENCE THE VIDEOTAPE OF APPELLANT'S SECOND CONVERSATION WITH THE POLICE.

(Doc. 12, Exh. 5).  The State opposed the assignments of error, and on June 17, 2002, the appellate court overruled petitioner's assignments of error and affirmed the judgment of the trial court.  (Doc. 12, Exh. 7).

Petitioner timely appealed to the Supreme Court of Ohio and raised the following propositions of law:

3

PROPOSITION OF LAW NO. 1: A TRIAL COURT ERRS IN VIOLATION OF DUE PROCESS AND A DEFENDANT'S RIGHT TO COUNSEL WHEN IT FAILS TO INQUIRE INTO A CONFLICT OF INTEREST EXPLICITLY BROUGHT TO ITS ATTENTION DURING COURT PROCEEDINGS IN VIOLATION OF SECTIONS 10 AND 16, ARTICLE I, OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO. 2: WHEN AN ATTORNEY FAILS TO ADVANCE A PLAUSIBLE DEFENSE STRATEGY BECAUSE IT IS ADVERSE TO THE INTERESTS OF ANOTHER CLIENT, THAT ATTORNEY LABORS UNDER AN ACTUAL CONFLICT OF INTEREST DENYING HIS CLIENT THE EFFECTIVE ASSISTANCE OF COUNSEL. SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO. 3: WHERE AN ACCUSED ASSERTS HIS RIGHT TO REMAIN SILENT, THE POLICE DO NOT STOP THEIR INTERROGATION, AND THEN A VIDEOTAPE OF THE INTERROGATION IS PRESENTED AT TRIAL TO PROVE THE ACCUSED'S GUILT, DUE PROCESS IS VIOLATED UNDER ARTICLE I, SECTIONS 2, 9, 10, 14 AND 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

(Doc. 12, Exh. 10).  The State filed a memorandum in response.  (Doc. 12, Exh. 11).  On October 2, 2002, the Supreme Court of Ohio denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 12, Exh. 12).

Petitioner, through counsel, filed a post-conviction petition in the Butler County Common Pleas Court, which petition was ultimately denied by the trial court, the Twelfth District Ohio Court of Appeals, and the Supreme Court of Ohio.  (Doc. 12, Exhs. 13-25).

On February 6, 2004, petitioner, through counsel, filed a Petition for Writ of Habeas Corpus in this Court raising the following grounds for relief:

GROUND FOR RELIEF NO. 1:  SEDRICK FRANKLIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL

4

ATTORNEY LABORED UNDER A CONFLICT OF INTEREST.

Supporting Facts: Due to an actual conflict of interest with another client, Mr. Franklin's defense counsel failed to advance a potentially meritorious defense strategy on his client's behalf. The trial court was made aware of a potential conflict, but did not conduct any inquiry regarding its implications, thus depriving Mr. Franklin of a fair trial and the right to counsel.

GROUND FOR RELIEF NO. 2:  MR. FRANKLIN'S POST-ARREST SILENCE WAS USED AGAINST HIM BY THE PROSECUTION, UNFAIRLY PENALIZING HIM FOR EXERCISING HIS RIGHT TO REMAIN SILENT. Supporting Facts: Mr. Franklin asserted his right to remain silent during a police interrogation. Police ignored Mr. Franklin's desire not to speak with them, and continued to question him as he placed his head down on the interrogation room table. A videotape of his interrogation was used at trial to demonstrate his unwillingness to cooperate with police and answer questions, thus penalizing Mr. Franklin for exercising his right to remain silent.

(Doc. 1 at 2).

## III.  GROUND ONE IS WITHOUT MERIT.

Petitioner's first ground for relief asserts that he received ineffective assistance of counsel because his trial attorney, Carl Lewis, labored under a conflict of interest.  Petitioner contends that trial counsel Lewis previously represented Wayne "Brandon" Jarrett, a passenger in Riggins' vehicle, in another criminal matter.  Upon questioning by police at the station, Jarrett refused to answer any questions on the advice of counsel.  At trial, it was discovered that Attorney Lewis was the lawyer who accompanied Jarrett to the police station for questioning. After the meeting with police, Attorney Lewis advised Jarrett to "lay low."  (Doc. 12, Exh. 13A, Jarrett Affidavit).  Jarrett followed this advice and moved to Wilberforce, Ohio. *Id*.  Jarrett never appeared or testified at petitioner's trial.

At trial, a police detective testified that Jarrett would not answer any questions on the advice of counsel.  Attorney Lewis told the trial court at sidebar that he was the lawyer who had

5

advised Jarrett to remain silent.  (Tr. 239).  Attorney Lewis asked the court to prevent the witness from revealing his name to the jury because "[i]t might present some conflict here[.]"  (Tr. 240).  The judge told the prosecutor to instruct his witness not to reveal that Attorney Lewis was also Jarrett's attorney.  (Tr. 240).  The trail court made no further inquiry into the matter.

When the prosecutor asked the detective the reason the police were looking for Jarrett, defense counsel objected.  (Tr. 250).  Defense counsel argued that "[a]s to why you are looking for him, I think that's totally off base, Judge, and irrelevant."  (Tr. 250).  The prosecutor explained, "Well, the reason why I'm asking is I don't want Mr. Lewis to get up in closing argument and say, yeah, they're looking for him because they think he's really the shooter.  I want to get, I want to ask him why, as a suspect or as a witness to this."  (Tr. 250).  The court sustained the objection.  (Tr. 251).

Petitioner states that in preparation for his trial, he gave his lawyer a list of questions he wished to be asked of each of the state's witnesses, including Jarrett.  Attorney Lewis agreed to use the questions for all the witnesses except Jarrett because he "was not going to show up for trial."  (Doc. 15 at 4; Doc. 12, Exh. 13A, Franklin Affidavit).  Attorney Lewis relayed messages to petitioner from Jarrett throughout the trial, but made no effort to secure Jarrett's appearance or present a defense implicating Jarrett as the shooter.  *Id*.

In addressing the merits of petitioner's claim, the Twelfth District Court of Appeals, the last state court to issue a reasoned opinion on the claim, found the following:

Assignment of Error No. 1

{¶ 8} "THE DEFENDANT-APPELLANT RECEIVED THE [SIC] INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 9} An error by counsel, even if professionally unreasonable, "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland v. Washington (1984), 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, citing United States v. Morrison (1981), 449 U.S. 361, 364-365, 101 S.Ct. 665, 667-668.  To warrant setting aside the judgment, appellant must meet the two-prong standard for evaluating an ineffective assistance of counsel claim as enunciated by the Supreme Court of Ohio. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, citing Strickland, 466 U.S. 668, 104 S.Ct. 2052.

{¶ 10} Appellant must show counsel's conduct was objectively deficient by producing evidence that counsel acted unreasonably to meet the first prong of the Strickland test. State v. Sallie, 81 Ohio St.3d 673, 674, 1998-Ohio-343, citing State v. Keith, 79 Ohio St.3d 514, 534, 684 N.E.2d 47, 1997- Ohio-367. To establish the second prong, appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id. It is well-settled that a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Because there are " * * * countless ways to provide effective assistance in any given case," courts are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * * " when scrutinizing the reasonableness of counsel's representation. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. With these legal standards in mind, we review the claims asserted by appellant.

{¶ 11} Appellant argues a conflict of interest exists when a defendant's attorney also represents a witness to the crime and advises that witness to invoke his right to remain silent. Brandon Jarrett was one of the passengers in Riggins' pickup truck. Jarrett came to the police station for questioning, but was advised by his attorney to invoke his right not to talk with the police. Therefore, police were unable to obtain any statements from him. The attorney who advised Jarrett was the same attorney who represented appellant at trial. Appellant argues the police found a spent shell casing by the passenger door of the truck where Jarrett had been sitting. Appellant maintains that if Jarrett's involvement was innocent, he should have been allowed to speak with the police. Appellant also argues that if Jarrett gave a statement to the police, "additional reasons to raise reasonable doubt of [appellant's] involvement in the shooting" may have been revealed. Appellant argues that his attorney, by advising Jarrett to remain silent, prevented important information from being revealed which amounts to ineffective

7

assistance of counsel.

{¶ 12} However, appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Sallie, 81 Ohio St.3d at 674, 693 N.E.2d 267. Appellant has not shown that no reasonable fact-finder would have found appellant guilty had the alleged error not been made.

{¶ 13} Bundy and Wyatt both identified appellant as the individual who sold Wyatt counterfeit cocaine. Bundy and Wyatt identified appellant as the individual Wyatt had an altercation with when Wyatt requested the return of his money for the counterfeit cocaine. Bundy testified she saw appellant pull a gun on Wyatt. Wyatt testified he saw appellant pointing a gun at his vehicle. Bundy testified she saw appellant fire the gun. Bundy testified that appellant was the only person who had a gun that evening. Riggins, Bundy, and Wyatt heard three gunshots. The rear window of Wyatt's vehicle was shot out. One of the bullets struck Hennig in the head, killing him.

{¶ 14} Furthermore, Ronald W. Dye, a forensic investigator with the Ohio Bureau of Criminal Identification and Investigation, was given three Smith & Wesson ("S & W") .40 caliber shell casings from the crime scene for comparison. Two of the shell casings were found on the street and one was found in Riggins' pickup truck. Dye testified that all three shell casings were microscopically compared to each other and he confirmed that all the shell casings were fired from the same gun. Dye was also given the passenger seat headrest from Wyatt's vehicle. Dye testified that the headrest contained "a bullet jacket that is consistent with being a S & W .40 caliber or 10 millimeter caliber."

{¶ 15} Appellant has not shown how Jarrett's silence prohibited the police from discovering evidence favorable to appellant. Appellant has not shown that Jarrett's statements would not corroborate the statements of Bundy, Wyatt, and Riggins and further inculpate appellant. Riggins testified that Jarrett was in the vehicle with him when he heard the shots. Riggins testified he never saw Jarrett with a gun that night, never saw Jarrett fire a gun that night, and that Jarrett was in the car with him at the time he heard the shots take place. Furthermore, no inference of Jarrett's guilt may be drawn from his assertion of the right to remain silent. See State v. Branham (1995), 104 Ohio App.3d 355, 360, 662 N.E.2d 54. A reviewing court cannot presume that the possibility for conflict resulted in ineffective assistance of counsel. State v. Manross (1988), 40 Ohio St.3d 180, 182, 532 N.E.2d 735. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. Id. In sum, we find that appellant has failed to demonstrate that there exists a likely probability that, were it not for counsel's errors, the result of the trial would have been different. Therefore, the first assignment of error is overruled.

(Doc. 12, Exh. 7 at 3-7).

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio court of appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

9

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694.

In the case of an ineffective assistance of counsel claim based on an alleged conflict of interest arising from counsel's dual or joint representation, the defendant need not satisfy the *Strickland* "prejudice" prong, but rather a more lenient standard articulated by the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980).

In *Sullivan*, the Supreme Court examined its previous decision in *Holloway v. Arkansas*, 435 U.S. 475 (1978), which had held that where an attorney represents multiple defendants at trial and timely objects in open court to the joint representation but is nevertheless required to represent the co-defendants, an automatic reversal is mandated unless the trial court determines

10

there is no conflict of interest.  435 U.S. at 488.  However, the Supreme Court declined to extend the automatic reversal rule to cases where there was no objection made at trial to joint representation.  In such a case, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  *Sullivan*, 446 U.S. at 348.  Where the defendant shows a conflict of interest adversely affected his lawyer's performance, prejudice will be presumed.  *Sullivan*, 446 U.S. at 350; *see also Mickens v. Taylor*, 535 U.S. 162 (2002) ("[P]rejudice will be presumed only if the conflict has significantly affected counsel's performance–thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown.").

The relaxed standard of *Sullivan,* presuming prejudice where the defendant demonstrates an actual conflict of interest which adversely affected the lawyer's performance, is premised on the notion that there is a high probability of prejudice arising from joint representation which is difficult to measure.  *Mickens*, 535 U.S. at 175.

In *Mickens*, the Supreme Court endeavored to draw a clear line between the *Strickland* and *Sullivan* standards by emphasizing that the *Sullivan* standard is for actively represented conflicting interests.  The *Mickens* Court was clear that joint representation deserved a more relaxed *Sullivan* standard because in those cases it is difficult to prove prejudice.  However, "[w]hether *Sullivan* should be extended to [successive representation] cases remains, as far as the jurisprudence of this Court is concerned, an open question."  *Id*. at 175.

The Sixth Circuit has noted that *Sullivan's* lessened standard of proof, the standard advocated by petitioner in this case, has never been extended or applied by the United States

Supreme Court to any conflict other than joint representation.  *Smith v. Hofbauer*, 312 F.3d 809, 818 (6th Cir. 2002), *cert. denied*, 540 U.S. 971 (2003).  "Joint, or dual, representation occurs where a single attorney represents two or more co-defendants in the same proceeding."  *Moss v. United States*, 323 F.3d 445, 455 (6th Cir.), *cert. denied*, 540 U.S. 879 (2003).  On the other hand, "[s]uccessive representation occurs where defense counsel has previously represented a co-defendant or trial witness." *Id.* at 459.  In cases involving successive representation, the traditional *Strickland* standard applies.  *See Lordi v. Ishee*, 384 F.3d 189, 193 (2004).  Therefore, in the instant case, the Court must determine whether Attorney Lewis's actions involve joint representation, to which the *Sullivan* standard controls, or whether they involve successive representation, to which the *Strickland* standard applies.

Petitioner contends the Ohio court of appeals erred in applying *Strickland's* higher standard of review in rejecting his ineffective assistance of counsel claim.  To the extent petitioner argues an actual conflict under *Sullivan* due to "joint representation," he has not shown any such joint representation or actual conflict.

Petitioner and Brandon Jarrett were never co-defendants in the same prosecution.  *Cf. Holloway v. Arkansas*, 435 U.S. 475 (1978).  Nor is there evidence that Jarrett was ever identified as a suspect in the crime for which petitioner was convicted.  Finally, Jarrett never testified as a witness for the prosecution during petitioner's trial.  While there is evidence that Attorney Lewis represented Jarrett at the time Jarrett was initially questioned by police about the shooting, there is no evidence that Attorney Lewis was actively representing Jarrett at the time of petitioner's trial.  *See Sullivan*, 466 U.S. at 348 ("[U]ntil a defendant shows that his counsel *actively* represented conflicting interests, he has not established the constitutional predicate for

his claim of ineffective assistance.") (emphasis added); *see also Gillard v. Mitchell*, 455 F.3d 883, 891 (6th Cir. 2006) (petitioner failed to show any conflict of interest where attorney represented petitioner's brother during earlier pre-trial proceedings where charges against the brother were dismissed (though he remained a suspect), and where lawyer no longer represented brother when brother testified at petitioner's trial.).

Unlike *Sullivan*, the present case involves successive representation as opposed to joint or simultaneous representation, and, therefore, the *Sullivan* presumption does not apply in this case. *See Smith*, 312 F.3d at 817 (refusing to extend *Sullivan* to an ineffective assistance of counsel claim based on an attorney's conflict of interest arising from anything other than joint representation); *Benge v. Johnson*, 312 F. Supp.2d 978, 994 (S.D. Ohio 2004)(refusing to apply the *Sullivan* standard outside the concurrent joint representation context).

Even assuming "joint" representation in this case, petitioner has failed to show an actual conflict of interest which adversely affected Attorney Lewis's performance as required by *Sullivan*.

To establish an actual conflict, petitioner must show that a plausible defense was foreclosed. *Kirby v. Dutton*, 831 F.2d 1280, 1282 (6th Cir. 1987). If the conflict is to a matter that is irrelevant or is merely hypothetical, there is no constitutional violation. *Moss v. United States*, 323 F.3d 445, 464 (6th Cir. 2003) (citing *Sullivan*, 446 U.S. at 350). Petitioner must point to specific instances in the record which establish inconsistent interests and demonstrate that counsel made a choice between possible alternative courses of action. *Moss*, 323 F.3d at 463. Petitioner must also show a connection between the alleged conflict and Attorney Lewis's performance, *i.e.,* that counsel was influenced in his basic strategic decisions by Jarrett's

13

interests. *Id*. at 466 (citing *Wheat v. United States*, 486 U.S. 153, 160 (1988).  "Adverse effect" may be established with evidence that "the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir.), *cert. denied*, 484 U.S. 870 (1987).

Petitioner has made no such showing.  In this regard, petitioner contends that "[a] strategy implicating Jarrett was arguably Franklin's best defense, but the approach was foreclosed due to counsel's conflict of interest." (Doc. 15 at 5).  Petitioner points to evidence showing: a shell casing was recovered from the map pocket of the passenger door where Jarrett was sitting (Tr. 227); "Wyatt's initial inability to identify Franklin as the assailant, stating he only knew the shooter was young and black (Tr. 115-117);" Jarrett was the only black male at the scene who did not have his hands tested for gunshot residue (Tr. 199, 255, 293); and "Jarrett's apparent sexual relationship with Toni Bundy, which would have impugned an already shaky 'eyewitness' identification.[2] (Tr. 134-136)." (Doc. 15 at 5-6).  Petitioner contends that Attorney Lewis "stopped far short of inferring Jarrett's culpability and balked at the opportunity to present this reasonable and viable strategy" during his closing argument, citing Transcript page 329. (Doc. 15 at 6).  Petitioner argues that when an "excellent opportunity arose to shift blame to Jarrett, Attorney Lewis objected to the evidence as being 'off base' and irrelevant. (Tr. 250)."  (Doc. 15 at 6).

Petitioner's proposed alternative theory is speculative and implausible given the facts of this case, none of which implicate Jarrett as the shooter.  When initially questioned by police,

---

[2] Tony Bundy testified that petitioner, Riggins, Jarrett, and Shonnie King entered her house on the evening of July 5, 2000, and that she and Jarrett went into the bedroom, then exited the bedroom. (Tr. 134-135).  From this testimony alone, petitioner infers an "apparent sexual relationship." (Doc. 15 at 6).  This is sheer speculation and unsupported by any other evidence in the record.

petitioner denied being at the area of the shooting on the night in question.  (Tr. 236-237).

However, the evidence at trial showed petitioner was not only present at the scene of the

shooting, but was the only person observed with a gun at the scene.  (Tr. 89, 138-39, 142, 144,

148).  Petitioner was identified as the only individual who sold the counterfeit cocaine to Wyatt

and who had a verbal altercation with Wyatt over the sale.  (Tr. 88-89, 137-38).  Although Wyatt

was initially unable to identify petitioner from the photograph spread, he was able to identify

him "face to face," "was sure [petitioner] was pointing [a gun] at him," and had no "question in

[his] mind who [he] dealt with that night."  (Tr. 117, 120, 126).  Petitioner was observed pointing

a gun at Wyatt's vehicle.  (Tr. 89, 138-39).  Petitioner was observed firing a gun at Wyatt's

vehicle as that vehicle attempted to leave the scene.  (Tr. 138-39, 148).  Petitioner jumped into

the back of Riggins' pickup truck immediately after the shots were fired (Tr. 187), then jumped

out of the truck a few blocks down the road (Tr. 188).  Three shots were heard.  (Tr. 138-39,

187).  One spent shell casing was found inside Riggins' vehicle in the passenger area and two

spent shell casings were found on the ground.  (Tr. 224-25, 227).  All three spent shell casings

recovered at the scene were fired from the same gun.  (Tr. 213-219).  One of the fired rounds

shattered the rear window of Wyatt's vehicle, passed through a headrest, striking the head of

Hennig, killing him. (Tr. 90, 217).  At the time of the shooting Jarrett was inside Riggins'

vehicle with Riggins and was sitting in the passenger seat with the door ajar. (Tr. 137, 186-87,

201, 258-59).  No witness to the shooting observed Jarrett with a gun.  (Tr. 144, 193).

The only reasonable inference to draw from these facts is that petitioner, and not Jarrett,

was the shooter.  In the post-conviction proceeding, an affidavit obtained from Jarrett was filed

with the petition in which Jarrett indicated that petitioner's trial attorney, Mr. Lewis, had advised

15

him to "lay low" after petitioner's arrest, and that Jarrett took that advice, moving to Wilberforce, Ohio to study at Central State University.  (Doc. 12, Exh. 13A, Jarrett Affidavit). Another affidavit was obtained from Attorney Lewis, in which he stated that he was not retained by Jarrett, but acknowledged that as a friend of the family he had advised Jarrett to not make any statements or answer any questions.  (Doc. 12, Exh. 13A, Lewis Affidavit).  The affidavit of Attorney Lewis indicates that none of the evidence ever implicated Jarrett as the shooter.  The affidavits do not suggest that Jarrett was anything but a witness whose testimony would have implicated petitioner to his detriment, rather than serve as a defense witness to exculpate him.

Petitioner's argument suggesting that Jarrett was the shooter is sheer speculation given the facts established at trial.  As the Ohio court of appeals noted, petitioner's belief that Jarrett would have exculpated petitioner in the crime while inculpating himself had Jarrett not listened to Attorney Lewis's advice is mere conjecture; Jarrett could just have easily told police petitioner was the shooter.  Thus, even assuming dual representation in this case, the Court cannot find an actual conflict of interest because petitioner's proposed defense strategy was not plausible.  *Moss*, 323 F.3d at 464; *Kirby*, 831 F.2d at 1282.  Thus, Attorney Lewis's claimed conflict of interest cannot be shown to have actually affected the adequacy of his representation under the *Sullivan* standard.

As the Ohio court of appeals implicitly found, petitioner's claim is one of a conflict of interest based on successive representation and thus governed by the *Strickland* standard. *Mickens*, 535 U.S. at 176.  Because the Supreme Court has not extended *Sullivan's* presumed prejudice rule beyond joint representation conflicts, the Ohio court of appeals was reasonable in not applying that rule to petitioner's conflict of interest claim.  There is no clearly established

16

federal law, as determined by the Supreme Court of the United States, mandating reversal of a conviction on a mere showing of a conflict of interest involving successive representation that adversely affected the attorney's representation of his client.

Examining petitioner's conflict of interest claim under the *Strickland* standards, *see Lordi,* 384 F.3d at 193, the Court finds the Ohio court of appeals' resolution of the claim did not involve an objectively unreasonable application of *Strickland*. Petitioner has failed to show how Jarrett's silence prevented the police from discovering evidence favorable to petitioner or that Jarrett's anticipated statements would not in fact corroborate the testimony of the other witnesses establishing petitioner as the shooter. Petitioner has failed to show that but for Attorney Lewis's advice to Jarrett there was a reasonable likelihood he would be found not guilty of murder and felonious assault. *Strickland*, 466 U.S. at 695. Therefore, petitioner's ineffective assistance of counsel claim, based on the alleged conflict of interest resulting from Attorney Lewis's successive representation of Jarrett, must be denied.


**V.  GROUND TWO IS WITHOUT MERIT.**

Petitioner asserts that his post-arrest silence was used against him by the prosecution, unfairly penalizing him for exercising his right to remain silent in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Doyle v. Ohio*, 426 U.S. 610 (1976). Specifically, petitioner states that he asserted his right to remain silent during a videotaped police interrogation. Petitioner states the police ignored his desire not to speak with them, as manifested by placing his head on the table and avoiding eye contact with the officers who continued to question him. Over the objection of counsel, the videotape of his interrogation was introduced at trial.

17

Petitioner states that the use of the videotape at trial penalized him for exercising his right to remain silent in violation of his constitutional rights.

In overruling this assignment of error, the Twelfth District Ohio Court of Appeals on direct appeal made the following findings regarding this claim:

{¶ 17} The Fifth Amendment to the United States Constitution guarantees that "no person * * * shall be compelled in any criminal case to be a witness against himself." This privilege is protected, pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, by advising a person subject to custodial interrogation, in clear and unequivocal language, that he has the right to remain silent. Id. at 467-68. Pursuant to Miranda, once a person in custody indicates that he wishes to remain silent, the interrogation must cease. Id. at 473-74. Statements obtained after an initial exercise of the right to remain silent are admissible only where the individual's right to cut off questioning has been scrupulously honored. U.S. v. Lopez-Diaz (C.A.9, 1980), 630 F.2d 661, 664, citing Michigan v. Mosley (1975), 423 U.S. 96, 103-04, 96 S.Ct. 321, 326-327.

{¶ 18} Appellant argues it was improper to use his post-arrest silence against him. Appellant argues, even though he never stated he wished to remain silent, his refusal to speak to police for the majority of the interrogation effectively invoked his right to remain silent. Appellant maintains that since he invoked his right to remain silent it was improper to use the videotape of the interrogation as evidence because "his expression and refusal to respond" gave him a "guilty look." Appellant maintains that while he did speak to the police during the course of the interview, he only spoke "in response to the oppressive and haranguing nature of the questioning by police, [which was] clearly not a voluntary statement by [appellant]." Appellant argues the use of the videotaped statements violated the holding in Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240.

{¶ 19} However, appellant was advised of his Miranda rights during the videotaped questioning. Appellant then spoke to the officers. The Doyle violation was not raised in the pretrial suppression motion, at the suppression hearing, nor specifically objected to during the introduction of the videotape at trial, therefore, the issue must be reviewed under the plain error standard. Crim. R. 52(B).

{¶ 20} Pursuant to Crim. R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist "unless it can be said that but for the error, the outcome

of the trial would clearly have been otherwise." State v. Maryland (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

{¶ 21} In Doyle, the United States Supreme Court held that using a prisoner's silence at the time of arrest and after he has received Miranda warnings to impeach that prisoner violates due process. The court also declared:

{¶ 22} "[e]very post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested * * *. Moreover, * * * it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle at 617-618, 96 S.Ct. at 2244, 2245. However, appellant never testified, therefore, the videotape was not used for impeachment purposes. Doyle holds that using a prisoner's silence after he has received Miranda warnings to impeach that prisoner violates due process. (Emphasis added.) Doyle at 617-618, 96 S.Ct. at 2244, 2245. Since the videotape of appellant's interrogation was not used for impeachment purposes, Doyle is not applicable. Consequently, there was no Doyle violation.

{¶ 23} Furthermore, a voluntary statement made by an accused during his interrogation after his arrest and prior to the time he has obtained counsel, after he has been informed of his constitutional right to remain silent, and after he has been informed that such statement may be used against him, is admissible in evidence, and its admission does not affect the validity of his conviction. Alexander v. Green (1965), 2 Ohio St.2d 231, 233, 208 N.E.2d 130. Voluntary statements are the product of a declarant's free and rational decision to speak. United States v. Murphy (C.A.6, 1997), 107 F.3d 1199, 1205. A statement is involuntary if the declarant's free will is overborne. Id.

{¶ 24} The videotaped interrogation begins at 12:32 p.m. Appellant is informed of the charges lodged against him. Appellant is then asked if he remembers his rights as they were explained to him when the officers questioned appellant the day before when he signed a Miranda card. Appellant is again advised that he has the right to remain silent, to end the questioning at any time, and to have counsel present. Appellant never invokes any of his rights. At 12:34 p.m., the officers ask appellant, "do you understand your rights," and he answers "yes, sir." The officers ask appellant, "do you want to tell us your side of the story." Appellant answers "no." Appellant never states during the questioning that he wishes to remain silent, however he does put his head down and avoid eye contact with the officers. The officers inform appellant that they know he was at the scene because a number of witnesses place him there. Appellant denies being at the scene and states "how you goin' to tell me where I was, I know where I was." The officers ask appellant "did you fire any shots?" Appellant answers, "I didn't kill nobody." The officers ask appellant "was it your gun?" Appellant answers, "I never had no

gun," and states "I'm not lying to you." The officers ask appellant "is that your response, it that what you're going with," and appellant responds, "I ain't did nothing."

{¶ 25} The entire interrogation is seven minutes in duration, from 12:32 to 12:39 p.m. Appellant's free will was not overborne in any manner. Appellant was informed of the charges against him. Appellant was advised of his right to remain silent and his right to counsel. Appellant did not invoke his right to remain silent or ask for counsel. Appellant voluntarily answered the officers' questions. Consequently, the videotape containing the statements was admissible and does not affect the validity of appellant's conviction. See Alexander, 2 Ohio St.2d at 233, 208 N.E.2d 130. Therefore, the second assignment of error is overruled.

(Doc. 12, Exh. 7 at 7-11).

Petitioner contends that the state appellate court "did not apply United States Supreme Court precedent to resolve" his second ground for relief, and had it done so, it would have found that admission of the videotape violated his right against self-incrimination. (Doc. 15 at 8). Upon review of the entire record, this Court concludes that petitioner's argument is without merit.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination applies to the States through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In *Miranda*, *supra,* the Supreme Court held:

[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning . . . [h]e must be warned prior to any questioning that he has the right to remain silent, that

anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 478-79.

A criminal defendant may waive his rights "provided the waiver is made voluntarily, knowingly and intelligently." *Id*. at 444. "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), quoting *Miranda*, 384 U.S. at 474 and 479. Invocation of the right to silence must be unambiguous, *McGraw v. Holland*, 257 F.3d 513, 519 (6th Cir. 2001), but "no ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination." *Esmpak v. United States*, 349 U.S. 190, 194 (1955).

The Supreme Court has held that questioning must cease when there is an unequivocal and unambiguous invocation of one's right to counsel. *Davis v. United States*, 512 U.S. 452 (1994). However, the interrogation need not cease where the invocation of the right to counsel is ambiguous. *Id*. The Supreme Court specifically declined to "adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id*. at 461-462.

The *Davis* rules governing the right to counsel apply equally to the invocation of one's right to remain silent. *See U.S. v. Hurst*, 228 F.3d 751, 759-60 (6th Cir. 2000); *Bui v. DiPaolo*, 170 F.3d 232, 239 (1st Cir. 1999). A defendant must articulate his right to remain silent "sufficiently clearly that a reasonable officer would, under the circumstances, perceive it as such." *Hurst*, 228 F.3d at 759-60 (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)

21

(determination whether right to counsel has been effectively invoked is objective one); *Medina v. Singletary*, 59 F.3d 1095, 1100-01 (11th Cir. 1995), *cert. denied*, 517 U.S. 1247 (1996) (applying *Davis* standard to invocation of right to remain silent)); *see also McGraw v. Holland*, 257 F.3d 513, 519 (6th Cir. 2001) (finding test in *Davis* applies to invocations of the right to silence, and that the defendant's statement "I don't want to talk about it" made eight or nine times throughout the interrogation and without qualification was an unambiguous assertion of her right to silence). In the absence of a clear and unequivocal assertion of a suspect's right to remain silent in response to any subsequent questions, questioning need not cease entirely. *Davis*, 512 U.S. at 459 (holding that cessation of questioning is not required "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in the light of the circumstances would have understood only that the suspect might be invoking the right to counsel"). The Court should review not only the words of the criminal defendant, but also the context of the invocation in determining whether the invocation was clear and unambiguous. *Abela v. Martin*, 380 F.3d 915, 926 (6th Cir. 2004) (where defendant stated "Maybe I should talk to an attorney by the name of William Evans," furnished the business card of the attorney to the interrogating officer, and the officer then left the interrogation, presumably to call the attorney, invocation of the *Miranda* right held clear and unambiguous). The use of surrounding circumstances may help to clarify the language of a suspect's request. *Id*.

Therefore, the question for this Court on habeas review is whether the Ohio court of appeals' application of the standards set forth in *Miranda* and its progeny was contrary to or an unreasonable application of those standards to the facts of this case.

As indicated above, the inquiry as to whether a suspect has invoked his Fifth Amendment

right to remain silent is an objective one.  *Davis,* 512 U.S. at 459-462.  This Court has reviewed petitioner's videotaped statement and concludes that the state court findings do not warrant reversal in federal habeas corpus review.  *See Williams v. Taylor,* 529 U.S. 362 (2000).

Petitioner was properly advised of his *Miranda* rights during the videotaped interrogation.  Although he initially responded "no" when asked "do you want to tell us your side of the story," his remaining statements and gestures do not constitute an unequivocal invocation of the right to remain silent in the context under which they were made.  Nor do his words and gestures evoke an unequivocal desire to end the interrogation.  Rather, his brief statements to the police amount to a denial of any involvement with shooting.  As the state appellate court reasonably found, petitioner never invoked his right to remain silent or for counsel.  Therefore, the continuation of the interrogation and subsequent use of the videotape at trial, therefore, did not violate *Miranda.*

Nor did the state appellate court fail to properly apply *Doyle* in its analysis of petitioner's claim.  The Supreme Court in *Doyle v. Ohio*, 426 U.S. 610 (1976), held that a defendant's post-*Miranda* silence cannot be used as evidence at trial to impeach the defendant's trial testimony. 426 U.S. at 618-19.  In *Doyle*, two criminal defendants testified at trial, making exculpatory statements that they had not offered previously following their arrest.  The prosecutor, over the objection of defense counsel, cross-examined each defendant about why he had not previously advised the arresting officers if the exculpatory statements were true.  The defendants had exercised their right to silence and had not made any post-arrest statements to the officers.  Based on those facts, the Supreme Court noted that total silence in the face of *Miranda* warnings is completely ambiguous and may be nothing more than the exercise of one's *Miranda*

rights. *Doyle*, 426 U.S. at 617. The Supreme Court held that the use of such post-arrest silence in cross-examination at trial violates due process because it is contrary to the implicit assurance that *Miranda* warnings will not be used against an arrestee. *Id*. at 618.

The fundamental principle behind *Doyle* is that the *Miranda* warnings carry an implied promise that "silence will carry no penalty." *Doyle*, 426 U.S. at 618. Thus, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 618; *see also Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986). "What *Doyle* stands for is that arrest-time silence may not be used to impeach trial-time testimony by asking something like: 'If the version of events to which you have just testified is true, why didn't you tell this to the police as soon as you were arrested?'" *Splunge v. Parke*, 160 F.3d 369, 371 (7th Cir. 1998), *cert. denied*, 528 U.S. 833 (1999).

When, however, a defendant chooses to speak after receiving *Miranda* warnings, as in this case, an entirely different situation occurs. In such situations, the controlling Supreme Court precedent is found in *Anderson v. Charles*, 447 U.S. 404 (1980). When a defendant chooses to offer a statement following arrest and *Miranda* warnings, he has not been induced to remain silent. Accordingly, testimony concerning his post-arrest conduct and statements is not a violation of *Doyle*. *Anderson*, 447 U.S. at 407; *see also United States v. Crowder*, 719 F.2d 166, 171-172 (6th Cir. 1983), *cert. denied*, 466 U.S. 974 (1984); *Hockenbury v. Sowders*, 718 F.2d 155, 156-159 (6th Cir.1984), *cert. denied*, 466 U.S. 975 (1984). The Supreme Court's rule in *Anderson* applies where, as here, the defendant does not testify, but his contrary version of events is placed before the jury. *See United States v. Hoac*, 990 F.2d 1099, 1104 (9th Cir.1993);

24

*Frazier v. Mitchell*, 188 F. Supp.2d 798, 826-27 (N.D. Ohio 2001), *rev'd in part on other grounds*, 343 F.3d 780 (6th Cir. 2003).

Here, petitioner was not subject to cross-examination by the prosecution on his post-arrest silence because he never testified at trial.  Therefore, as the state court of appeals properly found, the rule in *Doyle* does not apply to this case.  *See Rock v. Zimmerman*, 543 F.Supp. 179, 185 (M.D. Pa. 1982); *Carrion v. Scully*, 517 F. Supp. 691, 693 (S.D.N.Y. 1981).

In addition, the videotape was used not to draw an adverse inference from petitioner's silence, but rather to show his willingness to lie after having waived his right to silence remain silent.  (Tr. 244).  When questioned, petitioner did not exercise his right to keep silent, but denied having a gun that night or being at the scene, contrary to the testimony of the other witnesses at trial.  The right to remain silent does not include the right to make false denials.  *See generally Brogan v. United States*, 522 U.S. 398, 404 (1998) (Fifth Amendment privilege against compulsory self-incrimination does not include the right to lie).  Petitioner did not choose to remain silent in the face of his *Miranda* warnings.  To the contrary, petitioner made post-arrest statements to the police which contradicted the testimony of the other witnesses at trial.  His silence was not impermissibly used against him at trial in violation of *Doyle*, and the *Anderson* decision indicates that the state appellate court was not acting contrary to, nor making an unreasonable application of, controlling Supreme Court precedent when it denied petitioner relief on this question.  Therefore, this Court concludes that the state appellate court's adjudication of petitioner's claim did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined in *Miranda* and its Supreme Court progeny.  Therefore, Ground Two of the petition is without merit and should be

denied.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to Grounds One and Two of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:   7/19/2006 _____          s/Timothy S. Black _____
          KI                                    Timothy S. Black
                                      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SEDRICK FRANKLIN,                                    Civil Action No. 1:04-cv-089

     Petitioner,

                                              Spiegel, J.

     vs.                                              Black, M.J.

MARGARET BRADSHAW, WARDEN,

     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).